Carr, J.
I concur with my brother Brocltenbrough, on all the points; and as to the two first, I shall add nothing to what he has said.
The third instruction asked for the defendant, was that the notarial presentment of a foreign bill, and the notarial demand of acceptance &c. must be made by the notary himself, and that a presentment and demand by his clerk is not sufficient to authorize a protest, the notary having personally neither seen nor sought for the drawee. The circuit court in answer to this, admitted that the general abstract proposition was correct; but it added, that “the protest of a foreign bill of exchange, made in a foreign country, proved itself and this proposition is certainly correct; all the books so lay it down. But the court went on to say, that “ the protest now produced, appearing on its face to be in all respects regular, parol evidence was not admissible to prove that the protest was not made in the manner stated therein; but it was competent for the defendant to prove by legal evidence of any sort, either that *206 the bill was not presented by the holders, that acceptance wag not to tjiem refused, or that these things were not done in time by them.” We are Jo observe, that before this motion was made,-all the evidence had been, in fact, gone through; that it was all stated by the defendant, in his motion, to the court to instruct; and that he stated it to be all the evidence in the cause: and though this cannot be noticed in order to give the exceptions the effect of a demurrer to evidence, yet it may be noticed, in order to understand the opinion of the court, and to estimate its effect upon the cause. The court, then, having all the evidence before it, when it declared, that the protest being regular upon its face, parol evidence was not admissible to prove that it was not made in the manner stated therein, we may, I think, fairly construe this with reference to the particular proofs stated, thus—The notary, in his protest, says, that he exhibited the original bill of exchange to a clerk in the counting house of Gordon the drawee, and demanded acceptance thereof, and received for answer, that the bill would not be accepted &c. Here is a positive statement of the notary, that the bill was protested on his own personal presentation. Then comes the deposition of his cleric, who says, that he presented the bill to a clerk in Gordon’s counting house who refused acceptance, and that upon this (the clerk’s) presentation, the protest was made. The court having these two proofs before it, although it uses a very general phrase, may be understood to say, the notary certifies that he protested on his personal presentation; and the deposition of his clerk that the protest was on his presentment, shall not be received to contradict this. Although we may think that these expressions of the court, taken alone, áre too broad, yet when thus referred to the proofs on which they were intended to bear, they are not incorrect; and that they were meant in this restricted sense, is the more probable, when we look at *207 the conclusion, by which the court gave leave to the defendant to prove by legal evidence of any sort, that the bill was not presented by the holders, that acceptance was not refused, or that these things were not done in time. Surely, no injury could result to the defendant from the instruction; because, having stated all his evidence, we cannot presume he had any more; and because, if he had had more, he might, under the latter part of the opinion, have introduced it.
The cpiestion upon the fourth instruction asked for the defendant, and on the opinion of the court on the point, depends on the construction and effect, or rather the application to this case, of the 4th section of our statute concerning sterling debts and foreign bills of exchange. If that provision of the statute applies to a bill drawn and indorsed for the accommodation of the drawers in Virginia, for the purpose of being sold in New York, and actually sold there, the circuit court was wrong; if the statute does not apply to such a case, the circuit court was right. Looking back to the origin of this statute, I find that it was first enacted in 1755 (6 Hen. stat. at large, p. 479.) and that it has been continued in all our revisáis since, exactly in its original form. In Proudfit v. Murray, 1 Call 404. Pendleton, P. commenting on this provision, says—“ When the act of 1748 passed, the execution on all sterling judgments was to be levied in current money at 25 per cent, for difference of exchange ; which was found to be inconvenient from the fluctuating state of exchange; and therefore by the act of 1755, the courts were empowered to settle the rate of exchange at the time of giving judgment, and in order to enable them to distinguish bills bought at a low exchange, knowing they would be protested (then too frequent in practice), from such as were drawn in the ordinary course of business at the current exchange, the law required, that in all bills drawn for current money debts, or for current mo *208 ney paid for them, the sum of money paid or allowed should be expressed in the bill; or in default thereof, the sum of money expressed in such bill should be taken as current money, and judgment entered accordingly.” It may be remarked, in the first place, that this statute inflicts a penalty, and does not therefore call for a liberal construction; if the sum in current money paid or allowed for the bill be not expressed on its face, the holder forfeits the difference between sterling money and currency. But let us look at this law, first in its letter, then in its spirit, and see whether this bill of exchange be embraced by either. “In all foreign bills of exchange given for any debt due in current money of this commonwealth, or for current money advanced and paid for such bills ;” was this bill given for any debt due in current money of this commonwealth ? In Price v. Campbell, 2 Call 123. Carrington, J. said, it was the usual course of business in that day, for the debtor to draw a bill of exchange payable to his creditor, and get it guarantied by an indorser; a course, no doubt, growing out of the state of the country,- and of our relations with England, where all our produce was disposed of and our funds deposited. Did the bill before us spring from this source ? No, for we are told it was made and indorsed for the purpose of being sold in New York. It was given, then, for no debt due in the current money of this commonwealth. Was it given for current money of this commonwealth advanced and paid ? Assuredly not; for it was made to be sold, and was actually sold, in New York. How then could that part of the law be complied with, which directs, that the sum in current money which was paid or allowed for the bill, shall be mentioned and expressed in it ? The bill then is clearly not within the letter of the statute. It is quite as clear to my mind, that it is not within its spirit. What was the object of this law ? Judge Pendleton tells us, it was to enable the courts, *209 when settling the rate of exchange on judgments, to distinguish between bills bought at a low exchange, and such as were drawn in the ordinary course of business at the current exchange. However this may be, or whatever was the particular object of the legislature, it is evident from every part of the a.ct, and indeed from the very nature of legislation, that the sphere of its operation was limited to this commonwealth. The legislature never dreamed of regulating the trade in bills of exchange, which should be carried on in other countries or states, if the drawer and indorsers, being in New York, had there drawn this bill on Liverpool, and there sold it, it would hardly be contended, that, because they were citizens of Virginia, it came within our law. And yet, I insist, that if such had been the case, if the bill had been drawn, indorsed and sold there, the transaction could not have been more completely beyond the operation of our law, more entirely a New York negotiation, and a New York bill, than it is now. I ground this upon the legal proposition, that an accommodation bill, as this was, is mere waste paper until it is passed to some real holder for a valuable consideration. This is so well established, that it may seem superfluous to cite cases in its support; yet I will call to my aid one or two. In Downs v. Richardson, 5 Barn. & Ald. 674. 7 Eng. C. L. Rep. 227. a bill of exchange was drawn, accepted and indorsed, all for accommodation; it was also properly stamped; but before it was passed away for value, the date was changed : and the question was, whether this had not made it a new bill and rendered a new stamp necessary ? All the judges agreed, that if it could be considered a bill at all, before the change of date, a new stamp was necessary; but they were equally clear, that it was no bill till negotiated. Abbot,, C. J. said, “ that until negotiated, it was an unavailable instrument; and that it first became a bill of *210 exchange, when it was issued for a valuable consideration.” Bayley, J. said, “if an alteration be made before a bill is issued, a fresh stamp is not necessary. Then, when is a bill issued ? I am of opinion, that it is issued as soon as there is some person who can make a valid claim upon it; but if it remains in the hands of the original drawer, even with names upon it, under such circumstances as that he cannot have a legal claim upon those persons; it is not issued.” Holroyd, J. compared it to a bond before delivery. But although this, as a general legal proposition, be admitted, it is supposed, that though this bill was made and indorsed to be sold in New York, and was actually sold there, yet that it was a Virginia bill, and within our law, because the bill is dated “ Petersburg, Virginia,” and says “ for value in current money here received.” The first answer to this is that the date of the bill, like the signing and indorsing, is mere preparation ; it is no bill merely because it is dated; and as to the words “ for value received here,” we know that they do not state the fact; there was no value received at Petersburg, but only in New York on the sale there. But the case of the Marietta Bank v. Pindall, 2 Rand. 465. is a conclusive answer : there, the note was dated at Clarksburg, and was admitted to have been executed and indorsed in Virginia; yet, as it was negotiated in Ohio, this court pronounced it an Ohio transaction, and subject to the laws of Ohio.
The cases cited by my brother Brockenbrough are also strong to prove, that, as a general rule, the law of the place of contract must govern. I will add one to those cases; Van Reimsdyk v. Kane, 1 Gallison 375. where it is laid down (backed by numerous authorities) as the settled rule, that the law of the place where a contract is made is to govern, as to the nature, validity and construction of such contract.
*211 Cabell, J.
I think that the circuit court erred on the second point stated in the bill of exceptions. The question involved in the instruction moved for, was not an abstract one. It was applicable to the case made by the evidence, and necessarily arose in the cause; for the protest exhibited by the plaintiff, as proof of the presentment and dishonour of the bill, expressly states that the presentment was made to a clerk in the counting-house of the drawee, and that he refused to accept it: and it is perfectly clear, that no presentment will justify the protest of a bill, unless it be made to the drawee, or to his authorized agent. The defendant, therefore, was entitled to an instruction, that such a presentment was not sufficient to justify a protest, unless the clerk was authorized to accept or refuse. But the court declined giving any opinion on the point submitted to it, but proceeded to give an opinion on a point not submitted by either party. I do not deem it necessary to inquire, whether this opinion given by the court was correct or not; for however that may be, the court ought to have given its opinion upon the point on which it was asked.
Then as to the third instruction; 1 shall consider the instruction which the court gave, before I proceed to consider that which it refused. The instruction given, as I understand it, denies to the defendant the right to controvert the truth of the facts stated in the protest. The court, it is true, admitted that it was competent to the defendant to prove that the bill was not presented hj the holders, that acceptance vras not refused to them, or that these things were not done in proper time by them. But it is manifest to my mind, that the court was studiously drawing a distinction between those things which may have been done by or to the holders, previous to the protest, find those things which are stated by the notary, in the protest; and that the court intended to say, that while the former might be con *212 tro verted, the latter were incontrovertible. This opi- . r . ,. nion, as to the inadmissibility ot testimony to disprove facts stated in a "protest, is, I think, entirely erroneous. I readily admit, that the mere exhibition of a protest, under a notarial seal, is evidence, not only of the fact of the protest, but of the facts which it states in relation to the dishonour of the bill: but it is prima facie evidence only, liable, like all other prima facie testimony, to be rebutted or controverted by other evidence. The idea, that it cannot be contradicted, is not supported by even a dictum in any of the books that I have had access to. The case decided by lord Holt, 12 Mod. 345. is the foundation of the doctrine that a protest proves itself. In that case the plaintiff having, in order to prove a protest, produced an instrument attested by a notary public, the defendant insisted that he should prove this instrument, or at least give some account how he came by it: lord Holt held it unnecessary, because it would destroy commerce and public transactions of this nature. The extent of this decision, and of those founded on it, is, that the plaintiff shall not be obliged to produce other testimony than that afforded by the protest itself. But not a word is said as to the inadmissibility of disproving it by opposing testimony. The interests of commerce, do require such a rule -as that laid down by lord Holt; but it would be monstrous, that a notary who may have actually received payment of a bill, and pocketed the money, should, by protesting it as unpaid, put it out of the power of the drawer to prove the fact of payment, and thus compel him to pay it again to the holder. I think, therefore, that the court erred in the instruction which was' given on this subject. I think it equally clear, that it erred in declining to give the instruction moved for as to the insufficiency of a presentment and demand of acceptance or payment by a cleric, to justify a protest by the notary. *213 Justice Butter clearly expressed this opinion in Leftley v. Mills; and although that opinion was extrajudicial, yet the extrajudicial opinion of such a judge on such a subject, is, in the absence of any judicial opinion to the contrary, entitled to very grea,t weight. But I think the opinion is supported by good reason. We may give full credit to the statement of facts made by a notary, as the foundation of a. protest, when we know that he. is an officer selected and duly appointed for the purpose, and that he is required to found his statements on his own knowledge. But such credit ought not, and would not, be given to his statements, if it be admitted that he may make those statements, not on his own knowledge, but on the confidence reposed by him in the statements of others, vested with no legal authority, and acting under no sense of official responsibility. To subject men to the consequences of protests thus carelessly made, would greatly lessen the disposition to deal in bills of exchange, and consequently would do great injury to commerce, if such a custom as that stated in the record exists at Liverpool, I think it is against law, and ought not to be tolerated. I am therefore of opinion, that the court erred in declining to give the third instruction.
As to the fourth instruction: after much consideration, I came to the opinion (in which, I own, I had no little confidence) that the court acted correctly in refusing the instruction moved for, and in giving that which was given. But I have since been convinced, by the strong views which the president has taken of this subject, that the court erred in both respects; and I now declare my entire concurrence in the opinion which he has prepared and will deliver on this branch of the cause.
1 am of opinion, that the judgment be reversed, and the cause sent back for a new trial, on which the court is to avoid the errors committed on the former trial.
*214 Brooke, J".
The declaration .in all three of the counts, alleges, that the bill of exchange was drawn by Nelson Sf Minge at Petersburg in Virginia, indorsed there by Dunlop Sf Orgain to Clarice, and indorsed there by Clarke to the plaintiff Fotterall. There is no allegation of protest in any of them. The first and second counts claim fifteen per cent, damages under the statute of Virginia: the third claims only the £ 500 sterling money for which the bill was drawn, without damages. The jury found a verdict for the plaintiff for 2777 dollars 77 cents, with interest on 2222 dollars 22 cents &c. and the court gave the plaintiff judgment according to the verdict. In this state of the case, looking to the pleadings as laying the foundation of the action, the bill of exchange was clearly a Virginia bill, and the case was within the 4th section of the statute concerning sterling debts and foreign bills of exchange, which provides, that the sum expressed on the face of such a bill shall be taken to be current money, unless the current money paid and advanced for the same be expressed. If the plaintiff meant to rely on proof, that the bill, though drawn and indorsed at Petersburg in Virginia, was consummated by the sale of it to him in New York (as appears by the evidence • stated in the bill of exceptions) he should have alleged it in his declaration: he should have declared, that it was an accommodation bill, for which nothing was paid by either of the parties at Petersburg, and that it was first negotiated, first passed away for valuable consideration paid by him, in New York. But, by the. plaintiff’s own shewing in his declaration, and by the face of the bill itself, it was a Virginia bill drawn for value received at Petersburg, and not an accommodation bill made to be sold and actually sold at New York; and fifteen per cent, damages are accordingly claimed upon it, under the statute of Virginia. The cause was tried on the general issue pleaded to the declaration. I do not think that the de *215 fend ant’s admissions at the trial changed the issue, so as to let in proof, that the bill was an accommodation bill, returned from Liverpool under regular protest; thereby wholly disregarding the pleadings, and converting the plaintiff’s demand into a claim upon a bill subject to the laws of New York instead of the laws of Virginia. There is no protest alleged in the declaration, without which the damages demanded under the statute of Virginia, were not demandable. I think the fourth instruction given by the circuit court to the jury, that this was to be regarded as a New York bill, though it was counted on in the declaration as a Virginia bill, and damages demanded upon it under the statute of Virginia, was erroneous. Therefore, I am of opinion that the judgment should be reversed, the verdict set aside, and the cause remanded for a new trial.
Tucker, P.
I am of opinion, that there is no error in the first instruction of the circuit court. I concur in the opinion of my brother Cabell upon the second.
With respect to the third instruction, 1 am satisfied, from an examination of the authorities, that though the protest of a foreign bill of exchange proves itself, if it be under a notarial seal, yet it is only prima facie evidence that the bill was not accepted, or if accepted not paid, and it may be contradicted as to those facts by proof on the other side. If this be so, then the instruction of the court to the jury, that parol evidence was not admissible to prove that the protest was not made in the manner stated therein, was not correct, since parol evidence might be introduced to disprove the allegation of presentment lor acceptance, and refusal, set forth in the protest. This instruction, moreover, seems to me to have been gratuitous, since it is not responsive to the instruction asked for. Of the propriety of the instruction asked, I am by no means satisfied, notwithstanding the dictum of Butter, J. in Leftley v. Mills. It *216 is proved in this case, that there is a custom at Liverpool, that bills may be demanded by a notary’s cleric. I not see why this may not be, at least, with this obvious qualification, that though the notary’s authorized clerk may present the bill for acceptance, and though the refusal to pay him upon demand may justify a protest by the notary, yet the notary’s certificate is, in such case, no evidence whatever of the facts of presentment and refusal, but they must be proved by the oaths of witnesses as other facts are. Therefore, I am of opinion on this point, that though the instruction asked for ought not to have been given, the court was wrong in giving that which it undertook gratuitously to give.
I am also of opinion, that the fourth instruction was erroneous, the bill of exchange in this case being, in my opinion, a Virginia bill. I concede, without hesitation, that a bill of exchange, or accommodation note, drawn and indorsed for the purpose of being sent' into the market and sold, is not a complete and subsisting contract or security until negotiated for valuable consideration. It'then for the first time assumes the character of an,agreement, and until then it has been looked upon, in some regards, as nothing more than a blank piece of paper. But it is obvious, that this principle is to be received with some qualification. For though no proposition for a contract is, until it be accepted, of any force or validity, yet as soon as it is accepted and springs into existence, we look back to the circumstances under which the offer was made, to ascertain its true meaning and construction. Thus, if a proposition for a contract be made by a party resident in Virginia, that proposition must be considered as made with reference to Virginia law, unless the contrary appears; and if, being so made, it be accepted, it must be considered as accepted in the sense and spirit in which it was made, unless the contrary appears. And so with respect to a bill of exchange drawn in Virginia; if it *217 has clear reference to Virginia law or Virginia currency, if it bears the stamp of a Virginia bill, and be after-wards sold even in another state, the purchaser must be held to take it as he finds it. And though it is not an available security until the negotiation, yet when the negotiation has taken place, it is a contract on the one part to sell, and on the other part to buy, a Virginia bill. Each party has a right to look to the law of Virginia as governing his engagement; the drawer looks to it to determine the extent of his obligation, and every successive holder, however remote, looks to it for his damages and costs. It is not then asserted, that the bill is an available security before negotiation, but that, by the purchase, the buyer assents to take it according to the character stamped upon its face. And it is obvious, that every successive holder must look to the face of the bill, as evincing its character, and the nature of the responsibilities upon it. So too, with respect to the other principle, so much insisted upon, and so entirely uncontroverted; that, as a general rule, the lex loci contractus furnishes the law of the contract. Yet, where the contract is made with reference to the law of another place, the latter governs, and not the former. If, therefore, the contract, in this case, was made with reference to the law of Virginia, that law must govern, and it must be treated as a Virginia contract. If the bill offered for sale had the stamp and character of a Virginia bill, and was bought, no matter where, under that character, it must be considered as a Virginia contract, with all the consequences attached to it as such.
Now what is the case here ? The bill is drawn at Petersburg, Virginia. The drawer was resident there, as were the accommodation indorsers. It was drawn for £, 500. sterling, “for value received in current money here;” that is, in Virginia currency; and in that form it was sent abroad to be sold. It went into the market, with these distinctive marks of being a Virginia trans *218 ject, I must take it, that whatever commercial paper (above all other) purports to be on its face, it must- be taken to be in its essence. action. It was negotiated and purchased by Fotterall, with that character stamped upon it. Nay more, it was again indorsed by him and passed into the hands of his Liverpool correspondents. What was its character in their hands ? Was it a Virginia bill, which would entitle them to damages under our statute, or was it a New York bill as to the drawer, though there was not upon its face one single characteristic of a New York contract? Whether it be competent to the parties to a bill, to give to it this protean character, to bind the drawer by the New York law to one holder, and by the Virginia law to another, or whether it be competent to deny the character stamped upon the bill, and surprize the holder by proof that the contract was not consummated where the bill purported to be drawn,'—are questions which I must leave to be settled by those more versed than I am in the mystery of commercial law. But until my reason is further enlightened on the sub-
It cannot be denied, I presume, that the Virginia drawer had a right to confine his liability to the law of Virginia, the place of his residence, with whose regulations in relation to bills he was familiar. Suppose this was his design, in what other manner could it have been expressed on the face of the bill more decisively than by dating the bill here, and setting forth that it was for value received in Virginia currency ? If, then, we still treat it as a New York bill, we, in effect, deny that a bill negotiated in New York can be drawn with such a reference to the law of Virginia, as to make it subject to that law. This cannot be; and we must, therefore, take it that the drawer designed to bind himself by the law of Virginia.
In this light, indeed, the plaintiff in the cause seems himself to have considered it. He has declared upon *219 it as a Virginia contract. He sets it forth as a bill ° , i.- . . . _ drawn at Petersburg, and there is not an intimation, from the commencement to the close, that the contract was made elsewhere. Nay more, in two of his counts he demands damages of fifteen per cent. “ according to the statute in such case made and providedthus distinctly referring to the statute law of Virginia as governing the contract. Under this declaration, he was not entitled to allege, that the bill was not within the influence of the Virginia law. He invoked it to entitle himself to damages, and he must abide by the penalties it imposes for the irregularity of the instrument. The court was asked to instruct the jury, that if the plaintiff was entitled to recover, his recovery must be limited to the nominal amount of the bill. This instruction should have been given; for the declaration, and the bill, both shewed a Virginia contract, and the bill bore upon its face the defect, which by law furnished an insuperable barrier to his recovering more.
It was said, however, that this bill ought not to be visited with the penalties'of the law, because the drawer at Petersburg could not know for what sum the bill would sell, and could not, therefore, insert the true sum in the bill. But if this argument is of any force, it will apply to cases which must unquestionably be within the law. Thus, if a bill be drawn at Lynchburg, to be sold at Richmond, the same difficulty would exist as to the Lynchburg merchant. Yet, assuredly, it will not be said, in the teeth of the statute, that if this bill had been so drawn it would not have been within the statute—unless we essay to repeal the statute. If then this case be not within the statute, it can only be because it is a New York transaction ; a position which I have already endeavoured to controvert.
Again, it was said, that the New York purchaser was deceived. By no means. As a dealer in bills he ought to have known, and doubtless did know, our law; and if he did not, he should have refused to negotiate the *220 bill, or have insisted on its character being changed. Had the bill been actually first sold in Virginia, and then sold to him, it would have been confessedly within the law, and he would have been as liable to be deceived as in the present case. Yet there can be no doubt he would have 'been forced to submit to the penalty, and to take his judgment for currency only. That is all I think him entitled to, under the law in this case.
■ In this view of the case, it is scarcely necessary to add, that there must have been a new trial directed, for the excess of damages given by the verdict. This has arisen from adding damages for the protest. But such damages cannot be recovered, unless the protest is set forth in the declaration; and this is not done in either of the counts. In England, indeed, the omission to set out the protest is but matter of special demurrer; and so, I presume, it is here. But though the declaration may be substantially good without it, it by no means follows, that it will entitle the party to recover damages, unless he sets forth that protest, which by our statute is an essential prerequisite to entitle him to them.
Therefore, I am of opinion, that the judgment should be reversed, and the cause remanded for a new trial.
The judgment entered was, that this court “is of opinion, that the judgment is erroneous: therefore, it is considered that the same be reversed and annulled,” with costs to the plaintiff in error: “ and it is ordered, that the verdict be set aside, and the cause remanded to the circuit superiour court of Petersburg for a new trial to be had therein.” Thus, this court did not decide in what points the judgment of the circuit court was erroneous, nor did it give any directions to the circuit superiour court as to the instructions it should give to the jury on the questions in the cause, should they be presented on the new trial; the reason of which will appear by adverting to the several opinions of the judges on the several points. •